**R. Douglas SPEDDING, d/b/a Douglas Toyota, Inc., Motor Vehicle Dealer # 630, Respondent–Appellant,**

v.

**MOTOR VEHICLE DEALER BOARD, Appellee.**

No. 95CA0241.

Colorado Court of Appeals, Div. II.

May 16, 1996.

As Modified on Denial of Rehearing June 20, 1996.

Certiorari Granted Jan. 27, 1997.

Burg & Eldredge, P.C., Michael S. Burg, Janet R. Spies, Rosemary Orsini, Denver, for Respondent–Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Mark W. Gerganoff, Assistant Attorney General, Denver, for Appellee.

Opinion by Judge HUME.

Respondent, R. Douglas Spedding, d/b/a Douglas Toyota, Inc., appeals the order of the Motor Vehicle Dealer Board (Board) suspending its dealer's license for one day and imposing a fine, both of which sanctions were held in abeyance subject to a period of probation. We vacate the order and remand the cause for further proceedings.

Respondent was charged with violating the Automobile Dealers Act, § 12–6–101, et seq., C.R.S. (1991 Repl.Vol. 5A), and with engaging in deceptive trade practices under the Consumer Protection Act at § 6–1–105(1)(ii), C.R.S. (1995 Cum.Supp.)(failure to disclose to buyer in writing that vehicle being sold is a salvage vehicle). Following an evidentiary hearing, the Board was advised that "willful," as found in the statute, did not apply to "failure to disclose." Thereafter, the Board, without finding that respondent acted willfully, found that it had failed to disclose material particulars to its customers and determined that its failure to do so constituted grounds to impose sanctions upon respondent. The Board also found that respondent had violated § 6–1–105(1)(ii) and what is now § 42–6–206, C.R.S. (1995 Cum.Supp)(disclosure requirements for transferring salvage vehicle title) and imposed sanctions.

## I.

Respondent contends that the Board erred in determining that § 12–6–118(3)(i), C.R.S. (1995 Cum.Supp.) does not require a finding that a motor vehicle dealer's failure to disclose material particulars to a buyer be "willful." We agree.

Section 12–6–118(3), C.R.S. (1995 Cum. Supp.) provides in pertinent part that:

A motor vehicle dealer's ... license may be denied, suspended, or revoked on the following grounds:

. . . .

(i) [w]illful misrepresentation, circumvention, or concealment of or failure to disclose, through whatsoever subterfuge or device, any of the material particulars ... required to be stated or furnished to the buyer.

■ Interpretation of a statute is a question of law. And, construction of a statute must give effect to the General Assembly's intent and avoid an illogical result. *People v. Bergen,* 883 P.2d 532 (Colo.App. 1994). It is improper to go beyond the accepted meaning of the words in a statute if the statutory language is unambiguous. *Stjernholm v. State Board of Chiropractic Examiners,* 865 P.2d 853 (Colo.App.1993).

■ Although the construction of a statute by an administrative agency is entitled to deference, a reviewing court is not bound by an interpretation that misapplies or misconstrues the law. *Roberts v. Board of Assessment Appeals,* 883 P.2d 588 (Colo.App.1994).

■ If a statute defining an offense contains a specific *mens rea* requirement, that mental state is deemed to apply to every element of the offense. *Stjernholm v. State Board of Chiropractic Examiners, supra.*

■ Here, although the Board found that respondent failed to disclose material particulars to its customers, it made no specific finding that such actions were "willful." Further, in its response to respondent's motion to reconsider, the Board stated that it did not need to make a finding of willful failure to disclose because "willful" applied only to misrepresentation, circumvention, or

concealment of material particulars, the first three conditions described in § 12–6–118(3)(i). We do not agree with this interpretation.

"Willful," as the beginning word of the phrase, is meant to modify all the actions that are listed after it. *See Bedford Motors, Inc. v. Harris,* 714 P.2d 489 (Colo.1986)("intentionally" applies to all elements of the conduct proscribed by § 12–6–118(3)(k), C.R.S. (1995 Cum.Supp.)).

The word "or" between "concealment of" and "failure to disclose" does not set apart "failure to disclose" from the rest of the sentence, but merely connotes that more than one way exists in which a dealer might withhold information from a buyer. *See Jones v. Westernaires, Inc.,* 876 P.2d 50 (Colo.App.1993)("or" demarcates different categories). "Concealment of" implies an affirmative act while "failure to disclose" suggests a passive method of withholding the same information.

It would be absurd to say that a violation of § 12–6–118(3)(i) occurs only when one actively and willfully withholds material information but that one who passively withholds the same information violates the statute whether acting intentionally, negligently, or accidentally. *See Colorado State Board of Medical Examiners v. Saddoris,* 825 P.2d 39 (Colo.1992)(interpretation of a statute is to be harmonious as a whole, not leading to absurd results).

■ According to the plain meaning of the words used in § 12–6–118(3)(i), the statute clearly requires a finding of "willful" failure to disclose material particulars to a buyer. Thus, we conclude that the Board erred in suspending respondent's motor vehicle dealer's license without specifically finding that its conduct was "willful." *See Sanchez v. State,* 730 P.2d 328 (Colo.1986)(fireworks dealers' licenses could not be summarily revoked without specific findings of willful and deliberate conduct as required by statute).

## II.

We reject respondent's contention that its due process rights were violated when the Board denied its motion for a continuance in

order to conduct further discovery relating to an alleged *ex parte* communication and petitioner's witnesses. However, we agree that respondent was denied a meaningful opportunity to respond to the charges against it when the Attorney General, during the hearing, introduced evidence of previous *ex parte* investigations by the Board that had resulted in an investigative determination that certain complaints against respondent were either "founded" or "unfounded." Such determinations were then made a part of respondent's "record," without providing respondent any notice or opportunity for hearing.

(A)

■ A presumption of regularity and validity attaches to proceedings conducted by administrative agencies. If administrative findings are made at the same time a decision is reached, there must be a strong showing of bad faith or improper behavior before inquiry into the reasons behind official action is allowed. *Hadley v. Moffat County School District RE–1,* 681 P.2d 938 (Colo.1984).

■ The grant or denial of motions relating to discovery in a quasi-judicial proceeding before an administrative agency is within the discretion of the hearing tribunal. *Rosenberg v. Board of Education,* 710 P.2d 1095 (Colo.1985).

Here, respondent requested a continuance in order to conduct discovery relating to the existence of an alleged supplemental report supplied to the Board prior to the formal hearing on the charges against respondent. It also asked that the report and any supporting documentation be made available. Respondent asserted in its motion that the Board improperly relied on the supplemental report to end settlement negotiations and proceed to a formal hearing.

■ Unlike the plaintiff in *Hadley v. Moffat County School District RE–1, supra,* who presented a writing by the defendant in support of his claim that the school board relied on an outside communication in its decision, here, respondent has presented no evidence to support its claim that a written supplementary report existed or that the Board was improperly influenced by such

report. In fact, the Board, in its order denying respondent's motion for continuance, specifically found that no *ex parte* communication had occurred. Rather, the challenged communication was a general status report regarding the cases pending before the Board during its regularly scheduled public meeting.

Thus, we conclude that the Board did not abuse its discretion in denying respondent's motion for a continuance and for discovery.

(B)

■ Due process is satisfied by providing adequate notice of opposing claims, a reasonable opportunity to defend against such claims, and a fair and impartial decision. *Davis v. State Board of Psychologist Examiners,* 791 P.2d 1198 (Colo.App.1989).

■ The only matters an administrative board may properly consider at a quasi-judicial hearing are those included in the notice upon which the hearing is based. *Spears Free Clinic & Hospital for Poor Children v. State Board of Health,* 122 Colo. 147, 220 P.2d 872 (1950).

During the hearing, the Assistant Attorney General introduced evidence of what he characterized as "founded" and "unfounded" complaints asserted against respondent in support of a charge of unfitness of character or record. However, there is no evidence in the record indicating that respondent had prior notice of any criteria pursuant to which the Board determined whether a complaint was "founded" or "unfounded," or that respondent was notified or provided an opportunity to participate in any proceeding in which such a determination was made. *See* § 24–4–105(2)(a), C.R.S. (1995 Cum.Supp.)(party facing charges entitled to hearing in conformity with statute); Motor Vehicle Dealer Licensing Board Enforcement and Hearing Procedures Requirements, 1 Code Colo. Reg. 204–14 (determination of a violation requires notice, an opportunity to request conference with the Board, and a formal hearing on the charge upon request before sanctions are imposed).

485

Although the Board argues that the Assistant Attorney General introduced the complaints only to show the existence of circumstances underlying the charge of unfitness and that it did not find respondent to be "unfit," nevertheless, the Board was also urged to consider the record of complaints in imposing sanctions for any charges proven at the hearing.

■■■■ Due process requires that sanctions should be imposed only on the basis of violations established in accordance with the agency's regulations and in line with constitutional protections. Because the investigation and categorization of "founded" and "unfounded" complaints were not done in a manner that afforded respondent a meaningful opportunity to respond, we conclude that it was denied its right to due process by the introduction of evidence of such complaints as a basis for sanctions to be imposed by the Board.

### III.

Respondent also contends that, because the Board wrongly commingled its investigative, adjudicative, and prosecutorial functions, it was denied its right to a fair and impartial hearing. To the extent that prosecutorial functions may have been unreasonably entwined with the adjudication of the charges against respondent, we agree.

In *Board of Education v. Lockhart*, 687 P.2d 1306 (Colo.1984), our supreme court determined that permitting a school district's counsel to be present during deliberations by the school board and to give advice on the state of the evidence while refusing to entertain any statement from the teacher's attorney clearly violated due process.

Here, respondent argues that the Board, during its deliberations, asked the prosecuting attorney whether § 12–6–118(3)(i) required a finding of "willful" conduct to support a violation of the statute, even though an independent conflicts counsel had previously been designated as an advisor to the Board. The record is unclear as to whether the prosecuting attorney general or the independent conflicts counsel was asked to provide an interpretation of § 12-6-118(3)(i). If a prosecuting attorney participates as an advisor to the Board during its deliberations, then an appearance of impropriety and fundamental unfairness results. To the extent this may have happened, we disapprove that practice.

### IV.

Respondent also contends that § 12–6–118(3)(i) is unconstitutionally vague because it fails specifically to define "material particulars." We disagree.

■■■ Initially, petitioner argues that this issue has been waived by respondent's failure to raise it before the Board. However, a party involved in an administrative action is not required to raise constitutional issues in an administrative forum because a hearing officer's decision on such issues is not considered authoritative. *See Denver Center for Performing Arts v. Briggs*, 696 P.2d 299 (Colo.1985). According to § 12–6–119, C.R.S. (1995 Cum.Supp.), this court has initial jurisdiction to review final actions and orders of the Board. Therefore, respondent's challenge to the constitutionality of § 12–6–118(3)(i) is properly presented for consideration here.

■■■ A statute is presumed to be constitutional, and a party asserting the contrary assumes a heavy burden in overcoming that presumption. *People in re R.M.D.*, 829 P.2d 852 (Colo.1992).

■■■ The words and phrases of a statute must be read in context and accorded their plain and ordinary meaning. *Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo.1994). Also, the General Assembly is not required to define specifically the readily comprehensible and everyday terms it uses. *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975).

■■■ Here, § 12–6–118(3)(i) requires the disclosure of "material particulars." "Material" is defined as pertinent or essential. *Random House Webster's College Dictionary* 836 (1991). *See also Black's Law Dictionary* 674 (abridged 6th ed.1991)(material defined as important, necessary). The word "particulars" is defined as specific points or details.

*Random House Webster's College Dictionary* 986 (1991). When these terms are accorded their common meanings, the phrase "material particulars," under § 12–6–118(3)(i), refers to those details concerning a vehicle for sale that are essential or necessary for a reasonable prospective buyer to know. Thus, we conclude that the phrase "material particulars" is readily understandable and is not unconstitutionally vague.

The order is vacated, and the cause is remanded to the Board for reconsideration consistent with the views herein expressed.

CRISWELL and JONES, JJ., concur.